# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JERRY L. JOHNSON, ) | |
| ) | |
| Plaintiff, ) | No. 15 C 2598 |
| ) | |
| v. ) | Magistrate Judge M. David Weisman |
| ) | |
| NANCY A. BERRYHILL,[1] Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Jerry L. Johnson brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration Commissioner's decision denying his application for supplemental security income benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

## Background

Plaintiff filed an application for disability benefits on January 19, 2012, alleging a disability onset date of January 1, 2001. (R. 272.) Plaintiff's application was denied initially on February 16, 2012, and on reconsideration on June 7, 2012. (R. 113-14.) An Administrative Law Judge ("ALJ") held a hearing on plaintiff's application on April 22, 2013. (*See* R. 80-112.) On May 30, 2013, the ALJ denied plaintiff's application. (*See* R. 118-29.)

---

[1]On January 23, 2017, Nancy A. Berryhill succeeded Carolyn W. Colvin as Acting Commissioner of Social Security. *See* https://www.ssa.gov/agency/commissioner.html (last visited June 2, 2017). Accordingly, the Court substitutes Berryhill for Colvin pursuant to Federal Rule of Civil Procedure 25(d).

On January 28, 2014, the Appeals Council remanded the case to the ALJ to: (1) "obtain additional evidence concerning plaintiff's schizoaffective disorder, including the Veterans Affairs Disability Rating determination"; and (2) "further evaluate [plaintiff's] mental impairments in accordance with the special technique described in 20 CFR 404.1520a"; (3) "obtain evidence[, if necessary,] from a psychiatric or psychological medical expert to clarify the nature and severity of [plaintiff's] impairments for the period prior to [his] date last insured of March 31, 2005"; (4) "[g]ive further consideration to [plaintiff's] maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations"; and (5) "[i]f warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on [plaintiff's] occupational base." (R. 136-37.)

The ALJ held a second hearing on July 15, 2014, and on October 15, 2014, she again denied plaintiff's application. (*See* R. 17-35, 45-79.) The Appeals Council denied plaintiff's request for review (R. 1-4), leaving the ALJ's decision as the final decision of the Commissioner, reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is

2

generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) (citation omitted).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four. 20 C.F.R. § 404.1560(c)(2); *Zurawski*, 245 F.3d at 886. If that burden is met, at step five, the burden shifts to the Commissioner to establish that the claimant is capable of performing work existing in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity from the alleged onset date of January 1, 2001 through his last insured date of March 31, 2005. (R. 20.) At step two, the ALJ determined that plaintiff has the severe impairment of bipolar disorder. (*Id.*) At step three, however, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 21.) At step four, the ALJ found that plaintiff retains the residual functional

3

capacity ("RFC") to "perform a full range of work at all exertional levels," except that he "cannot perform work involving detailed or complex instructions or tasks" and can only perform work that "involves occasional changes in the workplace setting[,] no public interaction[,] . . . occasional supervisor interaction," and "can work in close proximity to coworkers, but not on joint or shared tasks." (R. 22-23.) At step five, the ALJ determined that plaintiff is unable to perform any past relevant work, but that there are jobs in the national economy that he can perform. (R. 33.) Accordingly, the ALJ concluded that plaintiff is not disabled under the Social Security Act. (R. 34.)

In reaching this determination, the ALJ gave "very little weight" to the opinions rendered by plaintiff's treating psychiatrist, Dr. Polsby:

> Dr. Polsby provided a statement to claimant's representative on March 26, 2012, seven years after the date last insured. Dr. Polsby affirmed that she had cared for the claimant since October 2000. He had bipolar disorder with a volatile temper. He was unable to cope with ordinary situations . . . and was not capable of substantial gainful activity due to his psychiatric illness. Dr. Polsby provided this statement again on January 14, 2013 . . . . [, and] again on September 3, 2013, adding that she did not believe the claimant could complete an academic curriculum and . . . that he experienced episodes of mania, depression and auditory hallucinations. A month later, Dr. Polsby expanded her letter with unsupported statements regarding episodes of mania or depression, need for help with activities of daily living, inability to work with others and recurrent paranoia. Dr. Polsby concluded that it was not safe for the claimant to attempt to work, as he would likely decompensate risking injury to himself or others.

(R. 30) (footnote omitted) (citations omitted). The ALJ discounted these opinions because:

> [T]hey [are] fairly conclusory[,] [were] rendered more than a decade after the alleged onset date . . . [and] are belied by voluminous treatment notes that fail to demonstrate any episode of "volatile temper," violence, need of assistance with activities of daily living, decompensation, or inability to cope with ordinary situations. No episodes of mania or depression are noted during the relevant period nor are any auditory hallucinations. To the contrary, auditory hallucinations are denied. Rather, numerous instances of interaction with others are described without any notation of any volatile behavior . . . . The only recent instance where the claimant is described as angry and emotional concerned a visit with his general medical doctor regarding his diabetes. This incident did not

4

occur until 2012, 11 years after the alleged onset date. Prior to that, the claimant's condition was noted to have been aggravated after he was fired from the post office and had stopped taking his medication for 7 months. Immediate improvement was seen once the medications were restarted. In 2007, he is noted to be more irritable since his diabetes diagnosis (well after the period at issue) and could become verbally rude when overwhelmed. Although this notation does not concern the period at issue before me, the [RFC] finding accounts for the difficulty when overwhelmed by limiting the claimant's interaction with others and by limiting him to simple, routine tasks.

(R. 30-31) (citations omitted).

Plaintiff contends that the ALJ erred in rejecting Dr. Polsby's opinions because they are not, as the ALJ concluded, contradicted by Dr. Polsby's treatment notes. *See* 20 C.F.R. § 404.1527(c)(2) (a treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record"). The Court disagrees. Dr. Polsby's 2001-05 treatment notes do not suggest that plaintiff had episodes of depression or violence, show that he was independently performing activities of daily living, *e.g.*, taking care of his minor daughter, running errands for his grandmother, and taking kickboxing classes, had no hallucinations, had coherent thought processes, was optimistic about his employment and educational prospects, and behaved appropriately in an interaction with the police. (*See* R. 29, 460, 463, 465, 468, 470, 545-47, 554, 557-603.) These contemporaneous observations contrast sharply with the letters Dr. Polsby wrote years later, saying that plaintiff has a "volatile temper," auditory hallucinations, needed help with activities of daily living, had recurrent paranoia, and cannot safely work with others.[2] (R. 943, 1638, 1764, 1907.) Thus the ALJ's conclusion that Dr. Polsby's notes contradict her subsequent opinions is supported by the record.

---

[2] The ALJ also said Dr. Polsby's notes show that plaintiff was "doing well," an observation that carries little significance in the context of bipolar disorder. *See Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). Because, however, that was just one of many inconsistencies between Dr. Polsby's treatment notes and her subsequent opinions, it is not fatal to the ALJ's analysis.

5

Moreover, the letters submitted by Dr. Polsby appear to reflect on plaintiff's condition at the time the letters were written in the fall of 2013, rather than during the insured period. (*See* R. 1906-07.) Dr. Polsby's most comprehensive summary is dated October 21, 2013, and does touch on an event that occurred when plaintiff was employed by the U.S. Postal Service during the relevant time period. (*See* R. 1907 ("Mr. Johnson was not able to sustain his former job at the post office as he was in danger of physically hurting his former supervisor").) However, Dr. Polsby's notes from the time period following plaintiff's discharge from the Postal Service suggest that Dr. Polsby believed plaintiff to be a viable candidate for employment. (*See* R. 599 (dated 4/23/01) (stating that plaintiff "plans to wait on voc rehab services to see if he can get a jo on his own first."); R. 602 (dated 2/13/01) (plaintiff directed to contact social worker for vocational rehabilitation services). Because the relevant inquiry is whether plaintiff was disabled when his insured status expired, the ALJ correctly placed greater weight on Dr. Polsby's treatment notes from 2001, as opposed to Dr. Polsby's summary letter dated twelve years later (and eight years after plaintiff's last insured date), which did not specifically address plaintiff's condition during the relevant period. *See Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012) ("[W]hatever condition the claimant may be in at his hearing, the claimant must establish that he was disabled before the expiration of his insured status") (citing 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. § 404.320(b)(2); *Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011) ("the claimant had social security disability coverage only until the end of 2003; if she was not disabled by then, she cannot obtain benefits even if she is disabled now")).

Alternatively, plaintiff argues that there is other evidence that supports Dr. Polsby's opinions that the ALJ failed to discuss, specifically: (1) a May 2000 progress report by Dr. Hassan that says plaintiff "has often shown some hypomanic [symptoms] which may have

interfered with his occupational and social life" (R. 1629); (2) plaintiff's testimony that he "can't cook" (R. 59); (3) Dr. Polsby's increase of plaintiff's Lithium dose in April 2001 (R. 599); (4) plaintiff's positive "screen" for depression in October 2002 (R. 584); (5) plaintiff's mental health treatment plans for 2001, 2002, 2003, and 2005 that consistently describe plaintiff's condition as "[b]ipolar disorder, manic (in partial remission) as manifested by," among other things, irritability, impaired social and work functioning, and distractibility, and identify as long term goals "[d]ecrease thought disorder" and "[r]emain out of the hospital" (R. 564, 580-81, 594, 1618-19); and (6) a May 18, 2001 Department of Veterans Affairs' ("VA") decision to increase his VA disability to seventy percent (R. 433-38).

As an initial matter, an ALJ "is not required to address every piece of evidence" in the record. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Rather, "he must articulate some legitimate reason for his decision" and "build an accurate and logical bridge from the evidence to his conclusion," *id.*, both of which the ALJ did.

Secondly, the evidence plaintiff cites does not have the significance he ascribes to it. Dr. Hassan, for example, attributed plaintiff's condition to his "sporadic" attendance at appointments and failure to "tak[e] meds as directed." (R. 1629.) Plaintiff's testimony about his inability to cook occurred when he was discussing his physical, not mental, impairments. (R. 59.) The record contains no explanation for the change in plaintiff's Lithium dose and reflects no change in treatment after the depression screen, and the annual treatment plans do not explain the extent to which any of the enumerated symptoms impact plaintiff's ability to function or work. (R. 564, 580-81, 594, 1618-19.) Moreover, the ALJ thoroughly discussed the VA disability rating and

explained why he gave it "minimal weight"[3]: (1) the VA rated plaintiff thirty to fifty percent disabled throughout his fifteen-year employment with the Postal Service; (2) the VA refused to raise plaintiff's rating to 100 percent disabled; (3) the VA examiners did not agree on plaintiff's employability; and (4) the VA's decision was not supported by Dr. Polsby's treatment notes or the independent medical examiner's opinion. (R. 25, 29, 31-32.) Thus, the ALJ did not ignore evidence that supports Dr. Polsby's opinions.

Finally, plaintiff argues that the ALJ erred by failing to "contact[] Dr. Polsby for clarification of her medical opinion." (Pl.'s Br. Supp. Reversing Comm'r's Dec. at 13.) However, "[a]n ALJ need recontact medical sources only when the evidence received is inadequate to determine whether the claimant is disabled." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (per curiam). Because the ALJ here found that the evidence was insufficient to support the disability claim, not that it was insufficient to make a disability determination, she was not required to seek additional evidence.[4]

---

[3]Contrary to plaintiff's assertion, this assessment does not run afoul of the Seventh Circuit's instruction that ALJs give "the VA's determination of disability *some* weight." *Allord v. Barnhart*, 455 F.3d 818, 820 (7th Cir. 2006) (emphasis added) (quotation omitted).

[4]In his reply brief, plaintiff also argues that the ALJ improperly weighed the independent medical examiner's opinions and offered a flawed RFC. (*See* Pl.'s Reply Br. at 6-8.) Because these arguments were raised for the first time on reply, they are waived. *See Mendez v. Perla Dental*, 646 F.3d 420, 423-24 (7th Cir. 2011) ("[I]t is well-established that arguments raised for the first time in the reply brief are waived.").

## Conclusion

For the reasons set forth above, the Court affirms the Commissioner's decision denying plaintiff's application for benefits. Judgment is entered in the Commissioner's favor and against plaintiff.

**SO ORDERED.**         **ENTERED: June 2, 2017**

**M. David Weisman**
**United States Magistrate Judge**